**FILED & ENTERED**

MAY 14 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Jordan Wank<br><br>Debtor(s). | CHAPTER 7<br><br>Case No.: 1:12-bk-11628-MT<br>Adv No:   1:12-ap-01156-MT |
| A & S Investment, LLC, Mark Ferguson, Daniel Gordon, Basil Samona, Athar Siddiqui, George Tsoupakis<br><br>Plaintiff(s),<br>v.<br><br>Jordan Wank, Bruce Wank, Toby Wank<br><br>Defendant(s). | **MEMORANDUM OF DECISION RE (1) APPLICATION FOR COMPENSATION FOR PAYMENT OF FEES AND/OR EXPENSES FILED BY WILLIAM H. SCHULTZ; AND (2) MOTION FOR ATTORNEY'S FEES FILED BY LINCOLN QUINTANA**<br><br>Date:         March 11, 2015<br>Time:        11:00 a.m.<br>Courtroom:  302 |

  In this adversary proceeding, Plaintiffs Daniel Gordon, Basil Samona, A& S Investments, LLC, Athar Siddiqui, Mark Ferguson, and George Tsoupakis ("Plaintiffs") sought a judgment finding that the Stipulated Judgment entered on June 18, 2010 in Los Angeles Superior Court was excepted from discharge under 11 U.S.C. §523 (a) (2, 4, 6 and 19).   The complaint was later amended on May 18, 2012 (the "FAC").  As part of the settlement that led to the entry of the Stipulated Judgment (the "Settlement Agreement"), Jordan Wank ("Defendant" or "Wank") signed a Declaration ("First

-1-

1  Declaration"), which purported to set forth "facts" demonstrating that Plaintiffs had relied
2  upon representations made by Wank regarding their investments. Defendant later disavowed the First Declaration

On December 31, 2012, Plaintiffs filed their initial motion for summary judgment in this adversary proceeding (doc. 15). The motion was based entirely on the First Declaration, and the Court granted the motion. Defendant appealed. On January 29, 2014, the Bankruptcy Appeal Panel (the BAP) reversed the ruling granting the motion, and ruled that there was insufficient evidence of the facts which Plaintiffs alleged as the basis for the motion for the Court to have determined that there was no genuine issue of material fact (the "Remand," doc. 32).

After the Remand, Plaintiffs filed a second Motion for Summary Judgment on June 6, 2014 (the Second MSJ", doc. 61). This motion was essential identical to the first motion and was also based on the First Declaration. Wank opposed Second MSJ.  On October 14, 2014, the Second MSJ was later withdrawn under the "safe harbor" provision of FRBP 9011(c)(1)(A).

On August 13, 2014, a FRCP Rule 41 (a)(2) Motion to Dismiss was filed by Plaintiffs (doc.84), which Wank opposed. On January 7, 2015, the Court heard and granted the Motion to Dismiss. Thereafter, its Order dismissing the action with prejudice was filed and served (doc. 105).

Defendant now moves for an award for all of his attorney's fees and costs incurred throughout the entire litigation for his counsel William Schultz and Lincoln Quintana (the "Schultz Fee Motion," doc. no. 117 and the "Quintana Fee Motion," doc. no. 107 & 108, and together the "Attorney's Fee Motions"). Defendant seeks attorney's fees of $66,630 .55 and sanctions of $150,000.

Attorney's fees per contract to prevailing party under Civil Code § 1717

Attorneys' fees may be awarded and declared nondischargeable in an action to determine dischargeability of debt. Cohen v. De La Cruz, 523 U.S. 213, 223 (1998). Before attorneys' fees are awarded, however, two requirements must be met: (1) an underlying contract or nonbankruptcy law must provide a right to recover attorneys' fees, and (2) the issues litigated in the dischargeability action must fall within the scope of the contractual or statutory attorneys' fees provision. See Fry v. Dinan (In re Dinan), 448 B.R. 775, 785 (9th Cir. BAP 2011) ("under Cohen, the determinative question for awarding attorneys' fees is whether the creditor would be able to recover the fee outside of bankruptcy under state or federal law").

California Civil Code § 1717 provides a basis for a party to recover attorney's fees incurred in litigation of a contract claim. It provides, in relevant part:

  (a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract,

> whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. . . . Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit.
>
> (b)(1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section.

Cal. Civ. Code § 1717(a), (b)(1).

Attorney's fees awarded under Cal. Civ. Code § 1717 are specifically allowed as a recoverable cost under CCP §§ 1032 and 1033.5. CCP § 1033.5(c)(5). Cal. Civ. Code § 1717 creates a reciprocal right to recover attorney's fees as costs in a dispute over a contract containing an attorney fee clause, regardless of whether the attorney fee clause provision in the contract would have allowed for reciprocal recovery. Santisas v. Goodin, 17 Cal. 4th 599, 610-11 (Cal. 1998).

*Is there a prevailing party?*

Defendant's argues that an award of attorney's fees is appropriate because he is the prevailing party, as Plaintiffs' voluntarily dismissed the FAC after the BAP vacated a summary judgment ruling in their favor and remanded the matter for further proceedings. Why the dischargeability action was dismissed probably cannot be determined with complete clarity as this action and the fraudulent transfer action must be viewed in tandem.

The determination of "prevailing party" for the purpose of reciprocal attorney's fees in California is guided by the California Supreme Court's decision in Hsu v. Abbara, 9 Cal. 4th 863 (Cal. 1995):

> Accordingly, we hold that in deciding whether there is a "party prevailing on the contract," the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by "a comparison of the extent to which each party has succeeded and failed to succeed in its contentions." [Internal citation omitted].

Hsu, 9 Cal. 4th at 876.

If the Court compares the relief awarded on the FAC, (i.e., a determination that the debt from the Stipulated Judgment is non-dischargeable), with the final resolution of

just this case, (i.e., a dismissal under FRCP 41(a)(2)), Defendant did obtain his litigation objective in one respect -- a defeat of the dischargeability action so as to obtain his discharge in this chapter 7 case. Plaintiffs dismissal of the FAC was, however, to focus their attention on a related adversary wherein they are also plaintiffs along with the Chapter 7 Trustee, 1:12-ap-01154 (the "Trustee Adversary"). The Trustee Adversary seeks a judgment setting aside and recovering alleged fraudulent transfers made by Defendant.  The two cases must be viewed as a whole - the Plaintiffs do not seek simply to obtain an empty judgment denying discharge.  Plaintiffs seek to recover funds to satisfy the original wrong.

"*In determining litigation success*, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective." Hsu v. Abbara, 9 Cal. 4th at 877 (citations omitted)(emphasis in original).  The Trustee Adversary, which has now been settled, does not seek a determination of dischargeability. Presumably, while Defendant obtained his discharge in this bankruptcy, Plaintiffs have also achieved their objective -- to recover something for their troubles.  Thus, it is rather difficult to say that as a practical matter, Defendant really can be considered a prevailing party.  Even if Defendant were technically to be considered the prevailing party in the discharge action, as defined by Cal. Civ. Code § 1717(a), he would not be entitled to an award of attorney's fees because Defendant's attorney's fees in this action were not incurred to enforce the Settlement Agreement.

*Defendant does not have a contractual right to attorney's fees because the Complaint Sought a Determination of Dischargeability, not an Enforcement of the Settlement*

The Settlement Agreement, which resolved the underlying Superior Court case, authorized attorney's fees "[i]f there is litigation or a request that the Court enforce any of the terms of this Agreement, and/or performance hereunder, the prevailing Party shall recover reasonable attorney's fees and costs incurred in that litigation under California Civil Code Section 1717." Schultz Fee Motion, 3:23-26.  Defendant argues that the Settlement Agreement resolved the underlying LASC litigation and ended up forming the basis for this adversary proceeding.

Plaintiffs, on the other hand, contend that the FAC was brought to determine dischargeability of the debt for the Stipulated Judgment. Plaintiffs note that the Settlement Agreement was never included as an exhibit to either the original complaint or the FAC, because they did not allege violations of the Settlement Agreement in the FAC. Plaintiffs cite to In re Fulwiler to support their argument that even if the Settlement Agreement is characterized as part of the facts that were sued upon, Defendant's claim is barred. (Grove v. Fulwiler) In re Fulwiler, 624 F.2d 908 (9th Cir. 1980) (holding that attorney's fees were awardable to successful debtors under § 17(a)(2) of the Bankruptcy Act of 1898 only where the creditor brought the proceeding in bad faith or to harass the debtor).

Defendant argues in reply that the Stipulated Judgment was entered *pursuant to the Settlement Agreement*, and that Plaintiffs reliance on Fulwiler is misplaced, given that its progeny make clear that fees may be awarded to a prevailing party on a dischargeability action if the underlying contract or nonbankruptcy law provides such a right to recover.  Specifically, Defendant focuses on In re Saccheri as supportive of his position.  Saccheri v. St. Lawrence Dairy (In re Saccheri), 2012 Bankr. LEXIS 5140 (B.A.P. 9th Cir., Nov. 1, 2012).

In Saccheri, the debtor, a former attorney, procured investments from friends and clients to buy a dairy farm. Saccheri, 2012 Bankr. LEXIS 5140 at *2.  The debtor then made unauthorized use of the farm's funds and borrowed against the property for his own benefit.  Id. at *3.  After he was discovered, the parties entered into a settlement agreement, where the debtor agreed to pay attorney's fees incurred in enforcing the agreement against him.  Id. at *5-*6.  The debtor then filed bankruptcy instead of paying the settlement.  Id. at *6.  The bankruptcy court awarded damages and held the debt nondischargeable as both fraudulent and as incurred in breach of fiduciary duty. It also awarded attorneys' fees pursuant to the settlement agreement and Cal. Code Civ. P. § 1021. Id. at *8-*9.  In reversing the award of attorneys' fees on appeal, the BAP stated:

> In the bankruptcy court, the Dairy asserted that the "present issue before the court is simply the enforcement of the subject Settlement Agreement. In such matters, attorney's fees are permissible." The Dairy distinguished the cases of In re Fulwiler, 624 F.2d 908, and In re Bonnifield, 154 B.R. 743, contending that in those cases "dischargeability was at issue" and not the enforcement of a Settlement Agreement. *Exactly*. The Dairy's claims in the nondischargeability proceeding were not brought to enforce the terms of the agreement or to pursue a breach. The Dairy did not plead that Debtor was liable under the Settlement Agreement nor did it litigate that Debtor had breached the agreement. Rather, the action pursued the remedy of nondischargeability based on the tort claims of fraud, breach of fiduciary duty and embezzlement for purposes of § 523(a)(2)(A) and (a)(4).

In re Saccheri, 2012 Bankr. LEXIS 5140 at *39 (emphasis added).

The BAP's reasoning in Saccheri is persuasive and totally on point on the question of whether Settlement Agreement was at issue in the FAC.  The Settlement Agreement was simply not at issue in this court.  The facts alleged, relief requested in the FAC, did not refer in any operative manner to the breach of the Settlement Agreement.  The FAC was focused on defeating Defendant's right to discharge the debt created by the Stipulated judgment.

In Saccheri, the BAP also considered that, "the attorneys' fees clause was in an agreement that was not even in existence at the time the acts which led to nondischargeability occurred. The adversary proceeding concerned those acts, not the Settlement Agreement."  In Saccheri, the debtor was alleged to have improperly taken funds between 2005 and 2007, and the settlement agreement was executed in 2008.

Id. at *3-*5.  The same is true here.  The FAC was premised on the actions described in the First Declaration, which described alleged actions that Wank engaged in sometime in late summer and fall of 2004.  First Declaration, 1:17-18.  The Settlement Agreement, with its attendant attorney's fee provision, was not executed until 2009.  Therefore, the attorneys' fee clause in the Settlement Agreement was inapplicable to the claims litigated.   Defendant is not entitled to an award of attorney's fees under Cal. Civ. Code § 1717.

Attorney's fees under 11 U.S.C. § 523(d)

11 U.S.C §523 (d) provides as follows:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C.  101(a)(8) defines "consumer debt" as a "debt incurred by an individual primarily for a personal, family, or household purpose."

Debts incurred in the production of income or to fund a business are not consumer debts. In re SFW Inc., 18 C.B.C.2d 584, 83 B.R. 27 (Bankr. S.D. Cal. 1988). Collier on Bankruptcy notes that some courts, including two courts of appeals, have adopted the "profit motive" test used in several Truth in Lending cases.  2-101 Collier on Bankruptcy P 101.08 (16th ed.).   Under the "profit motive" test, a debt is not a consumer debt if it "was incurred with an eye toward profit." Defendant argues in reply that he was not acting as an investment professional when he incurred this debt, so the debt is a consumer debt.  Defendant admitted in his Answer to the Complaint that Plaintiffs wired funds to him for investment in EIS, and he then wired those same funds to a party in London for investment in EIS.  FAC, ¶ 15; Answer to Complaint, ¶ 1.

Even if the Court were to go so far as to construe Defendant's actions as not having been done with a "profit motive," the fact that a debt was not incurred with a profit motive, however, does not make it a consumer debt if it was not incurred for personal, family or household purposes.  There are no facts in the record that would lead the Court to reasonably infer that this debt was incurred for a personal or family purposes.  Defendant is not entitled to attorney's fees under § 523(d).

Attorney's fees and Sanctions under 105(a) and FRBP 9011(b)

Defendant argues that the conduct of Plaintiffs' counsel was so egregious that monetary sanctions should be imposed to Plaintiffs' counsel to serve as deterrent to such actions in the future.  First of all, this Court has never found Plaintiff's actions to be egregious or baseless. Wank seeks also monetary sanctions in an appropriate sum to compensate him for the needless costs and fees he incurred defending the litigation.

Plaintiffs correctly argue that Defendant did not follow the proper procedure for sanctions under FRBP 9011, in that there has not been a properly noticed motion for sanctions under FRBP 9011. The only time Defendant has availed himself of the sanctions procedure of FRBP 9011 was when Plaintiffs filed the Second MSJ. In that instance, Plaintiffs withdrew the "challenged paper" within the time provided under the "safe harbor" provision of FRBP 9011(c)(1)(A). Defendant is not entitled to attorney's fees as a sanction under FRBP 9011 and § 105(a).

The Attorney's Fee Motions are denied.

###

Date: May 14, 2015

Maureen A. Tighe
United States Bankruptcy Judge